IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL JAMES DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:11-CV-323-WHA |
| | ) | [WO] |
| | ) | |
| JAY JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on claims presented by Michael James

Dixon ["Dixon"], an indigent state inmate, challenging the medical treatment provided to him

for injuries suffered in an assault by other inmates during his incarceration at the Lee County

Detention Center in July of 2009. *Complaint - Doc. No. 1* at 2-3.[1]  Dixon names Jay Jones, the

Sheriff of Lee County, Alabama, Dr. John H. McFarland, the physician for the Lee County

Detention Center, and Linda Stewart, a Licensed Practical Nurse employed at the jail, as

defendants in this cause of action.  Dixon seeks a declaratory judgment, injunctive relief and

monetary damages for the alleged violations of his constitutional rights. *Id* at 5; *Amendment to

the Complaint - Doc. No. 20* at 8.

---

[1]In the complaint, Dixon asserts that the assault occurred "[o]n or about August 2009." *Complaint - Doc.
No. 1* at 2.  The undisputed evidentiary materials filed herein establish that the assault occurred on July 9, 2009.
For purposes of this Recommendation and in the interest of clarity, the court will utilize the latter date when
referencing the assault.

The defendants filed a special report, relevant supporting evidentiary materials, including affidavits and medical records, addressing Dixon's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned report as a motion for summary judgment.  *Order of May 9, 2012 - Doc. No. 48*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, and the plaintiff's responses to the special report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current version of the rule.

its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment

stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Dixon is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative

4

value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

5

U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Dixon fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Suit Against Sheriff Jay Jones in His Official Capacity - Absolute Immunity

To the extent Dixon sues defendant Jones in his official capacity, he is immune from

monetary damages.[3]  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Sheriff Jones is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity.   *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  Deliberate Indifference

1. <u>Sheriff Jay Jones</u>.  Dixon complains that Sheriff Jones failed to intervene regarding the medical provided to him by the jail's health care professionals with respect to injuries he

---

[3]Under all facets of Alabama law, a county sheriff acts as a state officer "when supervising inmates and otherwise operating the county jails."  *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

suffered in an assault by other inmates.  Specifically, Dixon argues that Jones should have

"consulted with a third party physician at a local emergency hospital to determine" whether

medical personnel at the jail had provided proper treatment to him.  *Amendment to the Complaint*

*- Doc. No. 20* at 3.  The claim made against Sheriff Jones challenging the constitutionality of

treatment provided by medical professionals entitles the plaintiff to no relief as

> [t]he law does not impose upon correctional officials a duty to
> directly supervise health care personnel, to set treatment policy for
> the medical staff or to intervene in treatment decisions where they
> have no actual knowledge that intervention is necessary to prevent
> a constitutional wrong.  *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th
> Cir. 1977) (a medical treatment claim cannot be brought against
> managing officers of a prison absent allegations that they were
> personally connected with the alleged denial of treatment).
> Moreover, "supervisory [correctional] officials are entitled to rely
> on medical judgments made by medical professionals responsible
> for prisoner care.  *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69
> (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir.
> 1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893,
> 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent Dixon seeks relief from Sheriff Jones for the treatment furnished by the

facility's health care personnel based on his supervisory position, assuming *arguendo* this

defendant exerted some authority over the manner in which those persons responsible for the

provision of medical treatment rendered such treatment, the law is well settled "that Government

officials may not be held liable for the unconstitutional conduct of their subordinates under the

theory of *respondeat superior* [or vicarious liability]....  *Robertson v. Sichel,* 127 U.S. 507,

515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the

misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Dixon could attach to Sheriff Jones only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Dixon, however, has presented no evidence, nor can the court countenance the existence

of any evidence, which would create a genuine issue of disputed fact with respect to the claim that Sheriff Jones acted with deliberate indifference to Dixon's medical needs.  The record is devoid of evidence indicating that Jones personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Dixon; rather, it is undisputed that Jones did not participate in the provision of treatment to Dixon.  The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Dixon and that they provided treatment to Dixon in accordance with their professional judgment upon assessment of his injuries.

In light of the foregoing, Sheriff Jones can be held liable for decisions of medical personnel only if his actions bear a causal relationship to the purported violation of Dixon's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Jones, the plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Sheriff Jones] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that the plaintiff has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that

10

Jones directed medical personnel to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.  In addition, Dixon has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Sheriff Jones failed to take corrective action; instead, the undisputed medical records indicate that Dixon had continuous access to medical personnel and received treatment each time he reported to the health care unit seeking treatment.  Finally, the undisputed evidentiary materials submitted by the defendants demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by Sheriff Jones.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Summary judgment is therefore due to be granted in favor of defendant Jones.

Furthermore, even had the plaintiff presented a proper basis for the claims lodged against Sheriff Jones, the evidentiary materials filed by the defendants, including the medical records detailing the treatment provided to Dixon, demonstrate that health care personnel did not act with deliberate indifference to Dixon's medical needs.

2.  <u>Dr. John McFarland and Nurse Linda Stewart</u>.  Dixon complains that medical personnel at the Lee County Detention Center failed to provide him adequate medical treatment for injuries suffered in July of 2009.  Specifically, Dixon challenges the course of treatment undertaken by the medical defendants and argues that x-rays should have been ordered as he had "bruising on the chest and back in combination [with] difficulty breathing, sitting and standing[,]

periodic numbing sensation in his fingers, plus at times ... pain from his waist to legs that made it difficult to stretch." *Complaint - No. 1* at 2-3. Dixon further complains that these defendants failed to refer him to a free-world physician for a second opinion on the proper course of treatment. *Amendment to the Complaint - Doc. No. 20* at 5-6. Defendants McFarland and Stewart adamantly deny they acted with deliberate indifference to Dixons's medical needs and, instead, maintain that Dixon received all necessary and appropriate treatment in response to the injuries he received in the assault.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an incarcerated individual must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were

intentional or reckless.  *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just

knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896,

898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not

give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.

1985) (mere fact inmate desires a different mode of medical treatment does not amount to

deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344

(9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because

their opinions concerning medical treatment conflict with that of the inmate-patient or his

parent).  Self-serving statements by a plaintiff do not create a question of fact in the face of

contradictory, contemporaneously created medical records.  *See Bennett v. Parker*, 898 F.2d

1530 (11th Cir. 1990).

      The affidavits filed by the defendants address the allegations made by Dixon.  A thorough

review of the evidentiary materials submitted in this case demonstrates that these affidavits are

corroborated by the objective medical records compiled contemporaneously with the treatment

provided to Dixon regarding the instant claim of deliberate indifference.  Dr. McFarland

provides the following synopsis of treatment afforded Dixon for his injuries.

>       The Plaintiff's medical records document that Plaintiff was examined by
> Nurse Stewart on July 10, 2009, due to his complaint of having been in a fight the
> day before.  Nurse Stewart spoke with me about a treatment plan for Plaintiff and
> I instructed that Plaintiff be given Motrin.  Plaintiff's medication log shows that
> Plaintiff was given Motrin from July 10, 2009 until July 16, 2009.
>       On July 16, 2009, Plaintiff was examined by me.  I noted that Plaintiff
> stated that he was kicked in the ribs in a fight on July 9, 2009 and had one place
> on his chest that is tender to the touch.  Plaintiff was diagnosed with a bruised
> area on the left side of his chest with a possible separated or fractured rib.
> Plaintiff was prescribed Naprosyn for ten days and was instructed that it might
> take up to six weeks for the discomfort to resolve.  I specifically explained to
> Plaintiff that the results of a chest x-ray would not change the treatment
> prescribed and that an x-ray would not necessarily show an injury even if

15

Plaintiff's rib was injured.  I prescribed appropriate treatment for Plaintiff's injury.  Plaintiff's Medication Log documents that Plaintiff received Naprosyn as prescribed.

*Exhibit 2 to the Special Report of the Defendants (Affidavit of Dr. John H. McFarland) - Doc. No. 47-2* at 2; *see also Exhibit 3 to the Special Report of the Defendants (Affidavit of Nurse Linda Stewart) - Doc. No. 47-3* at 2 (same).

The medical records demonstrate that upon her initial examination of Dixon's injuries Nurse Stewart noted Dixon was "alert & responsive skin warm & dry to touch color good ... shoe print bruise [on left side]."  *Exhibit D to the Special Report of the Defendants - Doc. No. 47-8* at 3.  In addition, Nurse Stewart determined that Dixon's vital signs were withing normal range, his oxygen saturation rate was 98% and he exhibited  "good ROM [range of motion]."  *Id*.  Upon examination of Dixon on July 16, 2009, Dr. McFarland determined that Dixon "most likely" suffered a "[l]eft chest contusion versus rib fracture [or] costochondral separation."  *Id*. at 4.  Dr. McFarland prescribed Naprosyn for ten days, consulted with Dixon regarding his request for an x-ray and advised Dixon to return to the health care unit "in two weeks or as needed" for additional treatment.  *Id*.  Dixon sought no further treatment from medical personnel at the Lee County Detention Center after the examination by Dr. McFarland.  He did, however, file an inmate request form on July 27, 2009 seeking a second opinion.  This request was denied as medical personnel deemed such action unnecessary.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the medical defendants in addressing Dixon's injuries did not violate his constitutional rights.  The medical care Dixon received was certainly not "so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Dixon simply fail to establish deliberate indifference by the medical defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation). As is the issue here, whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. *Adams*, 61 F.3d at 1545-1546. In addition, an inmate's allegation that medical personnel did not diligently pursue alternative means of treating his condition "did not 'rise beyond negligence'... to the level of deliberate indifference." *Id*.; *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Dixon received treatment for his injuries and that medical personnel rendered this treatment to Dixon in accordance with their professional judgment after examinations of his physical condition. In addition, Dixon has failed to present any evidence which indicates the defendants knew that the manner in which they provided treatment to Dixon created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Dixon's medical needs. Consequently, the court concludes that summary judgment is due to be granted in favor of defendants

17

McFarland and Stewart on the claims presented by Dixon.  *Carter*, 352 F.3d at 1350; *Holifield*, 115 F.3d at 1564 n.6;  *Harris*, 65 F.3d at 916.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before November 28, 2014 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also*

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of November, 2014.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE